***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. The Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of the parties.
3. The employer/employee relationship existed between the parties on March 1, 2000; plaintiff was employed as a recruiter.
4. Forms 18, 19, 61, 33, and 33R are entered into evidence.
5. The following medical records, which are paginated and collectively designated as "Stipulated Exhibit 1," may be received into evidence without further authentication:
 (1) Charter Behavioral Health System, fourteen (14) pages, dated March 15, 2000;
 (2) Dr. Ralph Lowy, fifteen (15) pages, from June 12, 1998 to June 28, 2000;
 (3) Center for Adult Psychiatry, twelve (12) pages, from March 21, 2000 to August 1, 2000 and updated records from August 1, 2000 to May 2, 2001.
6. The depositions of Amanda Cohen, Robert H. Deters, Jr., Teresa Hadley and Dr. Magdalena M. Wojdynska are a part of the evidentiary record in this case.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACTS
1. At the time of the deputy commissioner hearing in this matter, plaintiff was a thirty-four (34) year old male who had begun working for defendant as a recruiter in June, 1999. Plaintiff's job duties consisted of recruiting contract employees, counseling, and fostering client relations. Part of plaintiff's job duties also included the hiring and firing of contract employees. At the time of the deputy commissioner hearing, plaintiff had fired individuals on at least six (6) different occasions. Prior to working for defendant, plaintiff worked for Manpower.
2. The proper procedure for terminating employees' contracts is for the recruiter to call the contract employee at home and let him or her know his or her contract is ending. Employees are notified this way so as not to interrupt defendant's customer's workplace.
3. On February 28, 2000, plaintiff called Lynn Eckert, a contract employee, to let her know her contract was ending because of her belligerent behavior toward a permanent staff member of PPD, the clinical research organization where she was placed. Plaintiff and Lynn Eckert apparently had a loud, unfriendly conversation on the telephone.
4. The next day, March 1, 2000, Chris Eckert, Lynn Eckert's husband, came to plaintiff's place of employment. Plaintiff testified that Mr. Eckert came to plaintiff's worksite unannounced, went past three receptionists, searched for plaintiff, and upon finding him, verbally threatened to kill plaintiff. Teresa Hadley, who had begun working at ClinForce (then defendant Staffmark, Inc.) the day before, had her desk situated directly in front of plaintiff's desk. Ms. Hadley saw Chris Eckert and plaintiff having a conversation, but there was no yelling involved. Chris Eckert never touched plaintiff. However, once their voices became somewhat elevated, plaintiff's manager intervened and had a conference with Mr. Eckert out of plaintiff's presence. Shortly thereafter, plaintiff stood up from his desk and allegedly said "[s]omebody's going to pay for this, even if it's — even if it's workers' comp."
5. Following the alleged March 1, 2000 incident, and around mid-March, 2000, ClinForce was asked by PPD, a clinical research organization and ClinForce's third largest client, to end two contract employees' employment. After plaintiff requested that he be allowed to terminate these two people, plaintiff was specifically told by his supervisors to end those employees' contracts by phone at home or after work, in accordance with the company's policy. However, plaintiff failed to follow these instructions and terminated the two contract employees in person at the client site, PPD. The defendant interpreted plaintiff's method of termination in this instance as a blatant disregard for company policy.
6. Plaintiff's on-site termination of the two contract employees at PPD disrupted the workplace environment at PPD and upset the management at the company. As a result of plaintiff's actions in terminating the two contract employees in person, management at PPD told officials at defendant that it did not want plaintiff on its property at all. As a further result of his actions, plaintiff was subsequently terminated by defendant on or about March 14, 2000. Plaintiff's termination was unrelated to the alleged March 1, 2000 incident, and any non-disabled employee would have been terminated for engaging in conduct similar to plaintiff's. Plaintiff has proffered no evidence that his termination was a pretext.
7. With respect to plaintiff's medical treatment following the alleged March 1, 2000 incident, plaintiff was seen by his family physician, Dr. Ralph Lowy. On March 2, 2000, plaintiff presented to Dr. Lowy and discussed an apparent "incident" that had ensued the day before. However, Dr. Lowy's medical notes contain no description of any threats made upon plaintiff by Chris Eckert.
8. On March 14, 2000, Dr. Lowy referred plaintiff to a psychiatrist, Dr. Mazzaglia. On March 15, 2000, plaintiff called Dr. Lowy and told him that he had interviewed with Dr. Mazzaglia over the phone and was referred to his associate, Dr. Valentine. When plaintiff asked Dr. Lowy if he could be off work until he saw Dr. Valentine, Dr. Lowy recommended that plaintiff return to work and try to do the best he could.
9. On March 21, 2000, plaintiff began treating with Dr. Magdalena Wojdynska of the Center for Adult Psychiatry, PA Associates, upon a referral by plaintiff's then-attorney. Dr. Wojdynska, who is not board-certified in psychiatry, diagnosed plaintiff with post-traumatic stress disorder and panic disorder.
10. Plaintiff also treated with Mr. Robert Deters, a licensed clinical social worker and consultant in Dr. Wojdynska's office. Mr. Deters also diagnosed plaintiff with post-traumatic stress disorder and panic disorder but admitted that his diagnoses were made based on plaintiff's subjective complaints and that it was possible for a patient to deceive him. Further, Mr. Deters admitted that plaintiff's in-person termination of the two contract employees at the PPD client site was behavior that was not consistent with his diagnosis of post-traumatic stress disorder.
11. According to Mr. Deters, post-traumatic stress disorder can be defined as a mental condition which requires for its diagnosis that (1) the patient has been exposed to a traumatic event in which he experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury or a threat to the physical integrity of himself or others, and that (2) the patient's response involve intense fear, helplessness, or horror. The alleged March 1, 2000 event did not involve actual or threatened death or serious injury or threat to the physical integrity of plaintiff or others that rises to the level necessary to make a finding that this event satisfies that element of post-traumatic stress disorder. Nor did plaintiff's response to that event, as reported, involve fear, helplessness, or horror, save the plaintiff's own rendition of the facts during his hearing testimony. At the hearing, plaintiff presented no witnesses to the incident other than himself.
12. Dr. Wojdynska and Mr. Deters also diagnosed plaintiff with a panic disorder. Plaintiff told his doctors that he experienced the sudden onset of intense anxiety symptoms such as racing heartbeat, chest tightness, and sweating. However, plaintiff was sensitive to various pre-existing stressors, including the dissolution of his marriage, his children's problems, and his decreased employment marketability. Although plaintiff testified that his panic disorder was related to the March 1, 2000 incident, the Full Commission finds that plaintiff's testimony and the history relayed to Dr. Wojdynska and Mr. Deters are not decidedly credible.
13. Further, a diagnosis of post-traumatic stress disorder and panic disorder depends on the truthfulness of the subjective history provided by the patient. The risk of making an accurate diagnosis of post-traumatic stress disorder and panic disorder based on the patient's untruthful reporting may be mitigated by administering objective tests and reviewing collateral information. Plaintiff was treated and/or evaluated for his psychological complaints that are the subject of this claim by Dr. Lowy, Dr. Wojdynska, Dr. Mazzaglia, Dr. Valentine, and Mr. Deters. However, the Full Commission gives no weight to the medical opinion of Dr. Wojdynska and the opinion of Mr. Deters since their diagnoses were based solely on plaintiff's subjective complaints, which are not altogether credible. Furthermore, Dr. Wojdynska only saw plaintiff a total of three (3) times, and neither she nor Mr. Deters ever consulted with Dr. Lowy, Dr. Mazzaglia, or Dr. Valentine or reviewed any of their notes. Further, Dr. Wojdynska did not rule out any of the other causes that may have contributed to plaintiff's post-traumatic stress disorder or panic disorder, or their attendant symptoms.
14. Notwithstanding Dr. Wojdynska's diagnoses of post-traumatic stress disorder and panic disorder, on April 13, 2000, Dr. Wojdynska opined that plaintiff could return to work. The various psychological symptoms claimed by plaintiff were not the result of, nor were they aggravated by, the alleged March 1, 2000 incident, but were rather the result of the various psycho-social stressors to which plaintiff was exposed, both prior to and during the pendency of this claim. Plaintiff is a divorced father who has sole custody of his three children. Plaintiff has been experiencing problems concerning his divorce and his children's adjustment problems. Further, plaintiff's three children have had psychological problems and have been treated by psychiatrists. Also, plaintiff had previously not been truthful with prospective employers with respect to his level of education, which has impaired his employment marketability and has contributed to his psycho-social stressors.
15. Plaintiff's inability to earn wages is not causally related to the alleged March 1, 2000 incident. Plaintiff's current psychological conditions are not causally related to the alleged March 1, 2000 incident, but are caused by unrelated psycho-social stressors in his life.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The alleged March 1, 2000 incident neither caused nor exacerbated plaintiff's post-traumatic stress disorder or panic disorder. Furthermore, the greater weight of the evidence shows that plaintiff's testimony is not credible, and, as such, plaintiff's diagnoses of post-traumatic stress disorder and panic disorder, which were based solely on plaintiff's subjective complaints, are not competent. Plaintiff's inability to earn wages stems from work misconduct and psycho-social factors and is unrelated to the alleged March 1, 2000 event. Thus, plaintiff has failed to prove that he sustained a compensable injury by accident arising out of and in the course of his employment with defendant and his alleged resultant disability and the extent thereof. N.C.G.S. §§ 97-2(6); 97-29.
2. Plaintiff is not entitled to temporary total disability compensation, permanent partial disability compensation, or medical benefits as a result of the alleged March 1, 2000 incident. N.C.G.S. §§ 97-29, 97-31, and 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim for medical benefits and indemnity compensation must be, and is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of May 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ DIANNE C. SELLERS COMMISSIONER